IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| CARMEN RIVERA BABIN<br><br>Plaintiff<br><br>v.<br><br>UBS FINANCIAL SERVICES INCORPORATED OF PUERTO RICO, INC.; RG INVESTMENTS CORPORATION; UNKNOWN BROKER A AND BROKER B; INSURANCE COMPANIES A, B, C, D AND E.<br><br>Defendants. | CIVIL NO.:<br><br>RE: FEDERAL SECURITIES VIOLATIONS; RULE 10-B-5 VIOLATIONS; FRAUD; BREACH OF FIDUCIARY DUTY, BREACH OF CONTRACT; SARBANES OXLEY VIOLATIONS.<br><br>PLAINTIFF DEMANDS TRIAL BY JURY |

## VERIFIED COMPLAINT

**TO THE HONORABLE COURT:**

**COMES NOW**, Carmen Rivera Babin represented through her undersigned attorney and very respectfully requests, states and prays:

### I.  JURISDICTION AND VENUE

1. The Honorable Court has original jurisdiction over the present actions by virtue of violations under Section 10(b) of the Securities Exchange Act of 1934 (15 U.S.C.A. § 78j (b)); Rule 10b-5 of the Securities and Exchange Commission (17 C.F.R. § 240.10b-5); and violation of NASD's customer suitability standard (Rule 2310).

2. This Honorable Court has and is invested with, and should exercise, pendent and supplementary jurisdiction to deal with intimately related state claims, inasmuch as there is jurisdiction under title 15 U.S.C.A. for pendant state claims.

It is also a matter of judicial economy to deal with all closely related matters stemming from a closely related common nucleus of facts in one forum.

3. Supplemental Jurisdiction can and should also be exercised under 28 U.S.C.A. § 1367. It constitutes textbook pattern of judicial economy to entertain all related matters in one lawsuit.

4. Similarly, this Court may and should exercise supplemental jurisdiction to claims under Article 1077 of the Puerto Rico Civil Code, 31 Laws P.R. Ann. § 3052, and under section 3081, 31 Laws P.R. Ann. § 3081 for breach of contract and deceit; and Articles 1802 and 1803 of the Puerto Rico Civil Code, 31 Laws P.R. Ann. §§ 5141 and 5142.

5. Similarly, this Court may and should exercise supplemental jurisdiction as violations of Section 302 of the Sarbanes Oxley Act, 15 U.S.C. § 7241 were incurred by codefendants.

## II. THE PARTIES

**PLAINTIFF:**

6. Carmen Rivera Babin, is a seventy (70) year old single lady. She is a resident and domiciliary of the Commonwealth of Puerto Rico who has very recently realized that, over time, since the year 2004, she has been fraudulently misled by UBS Financial Services Incorporated of Puerto Rico, Inc., which is also a successor in interest of RG Investments Corporation and others, consisting of, among others, statements, with intentionally untrue values, renewed by continuous monthly renewed violations of Rule 10b-5 of the Securities Exchange Act of 1934, 17 C.F.R. § 240.10b-5 as will be herein amply explained, and which persist and are renewed up to this date.

a)   Mrs. Rivera became aware of some of Defendants misrepresentations, to wit those having to for with the reliability of the investments made, when she stopped receiving her anticipated monthly payment of interest in May, 2008. Later, late in 2009, she has been informed that the values reflected in the statements from UBS are not legitimate values realizable in the marketplace.

**DEFENDANTS:**

7.   UBS Financial Services Incorporated of Puerto Rico, Inc. (hereinafter, UBS of Puerto Rico) is a licensed securities brokerage firm incorporated under the laws of the Commonwealth of Puerto Rico and a subsidiary of UBS Financial Services, Inc.

a)   UBS Financial Services of Puerto Rico, Inc. is a successor in interest of RG Investment Corporation, Inc. which is or was a subsidiary of UBS.

8.   Unknown Brokers A and B, are UBS' employees or collaborators, who and/or which entered in a certain agreement as representatives, who and/or which failed in their fiduciary duties of providing the highest standard of care at law and under prevailing regulations.

9.   RG Investments Corporation (hereinafter, RGI) is a licensed securities brokerage firm incorporated under the laws of the Commonwealth of Puerto Rico.

10.   "A" Insurance Company is an insurance company incorporated under the laws of the Commonwealth of Puerto Rico and/or a place other than the Commonwealth of Puerto Rico or elsewhere, but qualified to do business in Puerto Rico, which issued a policy or policies to cover some or all of the risks and/or occurrences incurred by UBS Financial Services Incorporated of Puerto Rico, Inc., and/or mentioned in this complaint.

11.   "B" Insurance Company is an insurance company incorporated under the laws of the Commonwealth of Puerto Rico and/or a place other than the Commonwealth

3

of Puerto Rico or elsewhere, but qualified to do business in Puerto Rico, which issued a policy or policies to cover some or all of the risks and/or occurrences incurred by UBS Financial Services, Inc., and/or mentioned in this complaint.

12.  "D" Insurance Company is an insurance company incorporated under the laws of the Commonwealth of Puerto Rico and/or a place other than the Commonwealth of Puerto Rico buy qualified to do business in Puerto Rico, which issued a policy to cover some or all of the risks and/or occurrences incurred by the Brokers A and/or B, and/or other mentioned brokers and/or advisors mentioned in this complaint, and/or UBS.

13.  "E" Insurance Company is an insurance company incorporated under the laws of the Commonwealth of Puerto Rico and/or a place other than the Commonwealth of Puerto Rico or elsewhere, but qualified to do business in Puerto Rico, which issued a policy to cover some or all of the risks and/or occurrences incurred by RG Investments Corporation, and/or other mentioned brokers and/or advisors, and/or officers and directors mentioned in this complaint.

### III. FACTUAL BACKGROUND SIMILAR TO ALL CAUSES OF ACTION
(All prior paragraphs are hereby incorporated by reference.)

14.  Mrs. Rivera commenced as investor in the year of 2001 when sixty one (61) years old. Her broker was from Popular Securities. Then, her broker moved to RG Investments Corporation and due to the confidence deposited in him, she also moved her accounts to RG Investments Corporation.[1]

---

[1] Mrs. Rivera started as an investor on 2001 at Popular Securities with Salvador Gómez as her broker. Later, Mrs. Rivera signed on March 25th, 2002, a *Master Purchase Agreement* with R-G Investments Corporation.

4

15. Since the beginning, Mrs. Rivera requested a secure investment properly suited to her age, financial condition and needs.[2]

16. It was stated by Mrs. Rivera that during her lifetime she wanted to enjoy the full benefits of her wealth committed to the investments.

17. She was told and advised there that she could invest in "supposed" low-risk instruments promising consistent interest payments, and an increment and/or promising to maintain the value of her funds. It was seemingly so until May, 2008.

18. Contrary to the current "secure investments" made, in the year of 2004, Mrs. Rivera's broker then bought her 2,800 shares in the PR Conservation Trust Fund (hereinafter "the Fund" or "PRCTF"), correspondent to a 55% of her capital. She was told before the purchase that the first person that would receive their money back if something negative happened was she. No document was given or provided to her at that meeting.

19. Also, she was told that the Fund's stability was assured by the emission of trust preferred stock of RGI.

20. The Conservation Trust carries out its mission through the acquisition and donation of lands of great ecological, aesthetic, historic and cultural value, and the establishment of conservation easements.

21. The information provided by the founders of the Fund was that was to the effect that the investment was a highly secure one with low risks. It was not.

22. During the years of 2005 and 2006 the PR Conservation Trust Fund operated without loss as per RG Investments Corporation's representations.

---

[2] Though, the account is nominally in her name and her son's Roberto Alfonso (for the purpose of convenience and signing power), Mrs. Rivera Babin is and was at all times relevant the sole owner of the account.

23. In March 2006, Mrs. Rivera moved her accounts to UBS Financial Incorporated of Puerto Rico, Inc. The first statement generated there was for April 2006. The account was opened by Antonio López her new financial advisor of the López Wealth Management Group.

24. The day the account was opened in UBS, they assured Mrs. Rivera that all investments made with her funds were solid and would be further enhanced, with or by high quality, highly conservative investments of the lowest risk. This was not so.

25. The only comment made by UBS' broker about the investment made in the PRCTF was "ese fondo no me gusta; vamos a monitorearlo". He however suggested no course of action regarding same. A mere casual statement of personal dislike was not sufficient to constitute a recommendation, and therefore, of risk by means of the second statement.

26. Later, when Mrs. Rivera and her son inquired of alternative investments, UBS only recommended their mutual closed end funds, which were of the same deficient quality of the PRCTF. No other recommendations were made.

27. On May 2008 the payment of interest from the PRCTF ceased.

28. No previous call was given in order to inform that the fund would stop the payment of interest.

29. Per Mrs. Rivera's son's request, who, like Mrs. Rivera, is not a sophisticated investor and is not a broker or person with knowledge about the market, they sent Mrs. Rivera the prospectus of the PRCTF. She had never before received one.

30. Nobody informed Mrs. Rivera about the reality of the PRCTF. Mrs. Rivera's problem arose when they stop paying her monthly check.

31. UBS and/or its agents and brokers knew for a considerable time verging on a year, of the slow deterioration of the Fund and did nothing with, or to protect Mrs. Rivera's funds, even though, she had specifically moved to UBS in order to have a close and secure relation in order to maintain her investments during her lifetime.

32. From the beginning, Mrs. Rivera's lack of knowledge, her age, the requested investments and the amount of her total initial investment capital, make this investor unsuitable in a market of volatility like the PR Conservation Trust Fund.

33. The investment was one fraught with risks which made it an unsuitable one.

34. By information and belief, UBS received during the past year (2008) an offer to buy the fifty percent (50%) of the Fund's value. UBS neglected the offer and never informed the investors.

35. UBS furthermore did not consult this matter of a possible sale with an independent examiner or advisor, as it was one in which due to its yearly commissions for managing the fund it has a conflict of interest.

36. UBS had all the elements in order to determine that the Fund was headed down hill, and failed in it's fiduciary duty to care for Mrs. Rivera's account.

37. Having the information, UBS did not advise the client that even if it was not (*arguendo*) at the outset unsuitable, that her investment had clearly now become a risky and unsuitable investment.

38. No call or meeting was made in order to discuss the investments and/or to promptly move the investment made in the PRCTF. Only one meeting was made as per Mrs. Rivera's son's request in order to invest in alternative markets and to protect his mother's only income.

39. UBS presented Mrs. Rivera scenarios no viable for her, like to invest in the Puerto Rico government instruments, which for that period of time was closed by the governor for two (2) consecutive months. The alternatives presented were also unsuitable and inadequate for Mrs. Rivera's needs.

## IV. CAUSES OF ACTION

### FIRST CAUSE OF ACTION – SUITABILITY
(All prior paragraphs are hereby incorporated by reference.)



40. This cause of action is one under Rule 10b-5 of the Securities Exchange Act, 17 C.F.R. § 240.10b-5[3], for deliberately providing false and misleading statements to Mrs. Carmen Rivera, and for recommending and/or investing her assets in clearly unsuitable investments for her age, financial condition and needs, and for reporting falsely the value of same.

41. The scheme, reiterated through the mails and telephones, maliciously developed and employed by RG and/or UBS, cost Mrs. Rivera a loss of over her 96% of the principal value (Mr. Rivera invested $280,000.00 and as to December 31st, 2009 her investment had a value of $12,852.00) of the principal amount, due to the purchase of unsuitable investments and low grade investments, to wit, the PR Conservation Trust Fund.

---

[3] Rule 10b-5: *Employment of Manipulative and Deceptive Practices*:

"It shall be unlawful for any person, directly or indirectly, by the use of any means or instrumentality of interstate commerce, or of the mails or of any facility of any national securities exchange,
(a) To employ any device, scheme, or artifice to defraud,
(b) To make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or
(c) To engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security."

42. Furthermore, due to the present unauthorized trading of her funds due to unsuitability of investment[4], she cannot currently trade anything in a standard exchange market; Mrs. Rivera was left with an unrealized buying power of $12,852.00.

43. Considering age and other aspects of Mrs. Rivera's personal and financial situation, the failure of UBS is crucial and damaging. These requirements were disregarded by RGI and/or by UBS, since if the investments had been properly disclosed, Mrs. Rivera would have never approved them, presuming they had been submitted for approval.

    i. RG and/or UBS did otherwise, omit information, and have either lost, and/or placed her assets at greater risk.

44. Simply stated, unsuitability is and hereunder consisted of the broker's direct investment in a insecure and risky investment to wit, the PR Conservation Trust Fund with Mrs. Rivera's assets, or recommendation to her to invest assets, or preserve her assets in contravention of the "customer's financial circumstances and stated investment objectives." 1 A.A. Sommer, Jr., *Federal Securities Act of 1934* § 5C.02 (Matthew Bender, Rev. Ed.). Such was here the case.

45. There were alternative investments of quality, rated AAA which at all times were available for purchase without such high commissions during the entire relevant period.

46. Mrs. Rivera, as explained herein, was not only pursuing guaranteed-safe, income producing investments, as <u>she was only suitable for an exceedingly low risk type of investment</u>.

---

[4] Under regulatory standards, a risky investment is considered *suitable* if the investor is in a financial position to take certain chances, expressly so states, and that he or she understands the nature of the risks and the possible consequences.

47. In the above captioned case, RGI and/or UBS omitted almost the entirety of the information which would have been required in order for Mrs. Rivera, a layperson who is aged, but educated, to understand and make the informed decisions regarding her accounts, to wit: a prospectus, and explanations in time which would have allowed her to make a decision to liquidate. In the contrary, they proposed her to make in other unsuitable investments (the alternatives were to buy Puerto Rico government instruments).

48. "A classic example [of unsuitability] is recommending volatile stocks that do not pay any regular dividends and present significant risk of loss of principal to an elderly person who depends on a regular return on an investment to support himself." *Id*. Significant parallels can be found between classic models of unsuitability and the situation in which Mrs. Rivera was thrust.

49. Mrs. Carmen Rivera has lost in her personal account as previously stated an approximate amount of $267,148.00.

50. No prospectus covering the PRCF ever arrived, prior to making or at the time of the investment, and its true market value was not reported in any public listing.

51. This is the so called "fraud on the market" presumption. Mrs. Rivera relied upon the deceitful statement of UBS because she thought that her money was traded in a well organized, and presumably efficient, market.

52. RGI's wrongful acts were performed within the legal grant of authority and in furtherance of the provisions of the account contract between RGI and Mrs. Rivera.

53. UBS's wrongful acts were performed within their grant of authority and in furtherance of the provisions of the account contract between UBS and Mrs. Rivera.

10

54. Mrs. Rivera's suitability claim as to her own account is well-founded because the securities obtained with her funds were unsuited for an elderly person who wants to assure the principal amount of her investment, thus, it is contrary to her stated needs and she always relied on RGI and/or UBS's fraudulent and reckless representations to her, and thus, believed that her assets were invested in suitable principal-guaranteed investments. Brown v. E.F. Hutton Group, Inc., 991 F.2d 1020, 1031 (2nd Cir. 1993); Banca Cremi, S.A. v. Alex. Brown & Sons Inc., 132 F.3d 1017, 1032 (4th Cir. 1997).

## SECOND CAUSE OF ACTION –UBS VIOLATED ITS FIDUCIARY DUTY
(All prior paragraphs are hereby incorporated by reference.)

55. RGI invested Mrs. Rivera's funds, monies and/or investments totaling no less than $545,000.00. To her best knowledge Mrs. Rivera's starting amount in the PR Conservation Trust Fund at UBS was of $280,000.00. The exit amount in 2009 was of $12,852.00 as stated by statements, which is mostly unrealizable due to illiquidity.

56. RGI and/or especially UBS omitted stating material facts regarding the PRCTF.

57. UBS had an ultimate fiduciary duty to Mrs. Rivera as the beneficial shareholder, and had the duty to disclose to her information before holding the stock for an unsuitable investment portfolio. UBS was aware of the situation at the PRCTF, and did nothing to advise their clients, which included Carmen Rivera Babin.

58. RGI and/or UBS committed omissions, which fall under misappropriating confidential information for securities trading purposes, in breach of a duty owed. These are clearly intentional due to the high commissions charged both at the outset (approximately 5.5% a) and later on a yearly basis (1%).

59. RGI and/or UBS had a duty to disclose or abstain. That did not occur in the present case.

60. The PRCTF's situation was available and well known by RGI and/or UBS who took advantage of such information by not making any statements in order to inform and/or prevent investor's losses, in this case, Mrs. Rivera's.

61. Defendant placed the firm's interest before Mrs. Rivera's.

62. UBS's agents had: (1) access to the information; (2) the degree of knowledge, involvement and control of the operations regarding their client's investments; (3) Mrs. Rivera is an older lady with no professional experience or expertise in these matters.

63. By information and belief, some of Mrs. Rivera's interest payments or dividends, were reinvested and entered into the pool of general losses. In no case should these monthly payments during the relevant period have totaled less than $1,167.00 compounded, minus any amounts withdrawn.[5]

64. It should be noted that if funds had been invested in very safe triple "A" securities, such as Ginnie Mae's, that Mrs. Carmen Rivera would not have suffered such a loss. On the contrary, given the interest rise, she would have received or had as unrealized, substantial gains in value.

65. Throughout the referred scheme of making unsuitable and fraudulent investments, Mrs. Rivera was led to believe and told that she was investing her money in low-risk securities and financial instruments (AAA), when in fact, Mrs. Rivera's funds, monies and/or investments were transferred mostly to instruments of high risk.

---

[5] For example, if Mrs. Rivera's funds ($280,000.00) had been invested in safe securities at a 5%, she would have generated $14,000.00 a year only in interest. In five years this amount would have been no less than $84,000.00 or of reimbursement or the accrued value at 5%.

66. Duties of avoiding negligence, improper conduct, failure to supervise, failure to report in correct and true fashion, failure to internally supervise, and duty to care, were breached. RGI and UBS and its broker employees, who incurred in the latter faults, among others, and by generating false statements as to the value of the account.

67. Duties to Plaintiff were breached by UBS. UBS and its broker employees incurred in, among other things, negligence, improper conduct, failure to supervise, failure in the duty to care, false reporting, and others.

68. UBS failed to provide to Mrs. Rivera material information regarding the PRCTF. No information was ever provided, only an expression as follows: "ese fondo no me gusta…vamos a monitorearlo". Furthermore, no highly conservative recommendation was ever made, nor was any action ever taken because the solution given for that unsuitable investment made with almost all Mrs. Rivera's funds was proposing her another unsuitable one. Even though, the problem was realized when Mrs. Rivera stopped to receive her monthly interests.

69. A meeting occurred on or about August 2007 with Mr. López where he granted Mrs. Rivera he will monitor the Fund.

70. At such a time she reacted, promptly, thus acting with due diligence in order to apprise herself of what had happened.

71. Mrs. Rivera is not a sophisticated investor.

72. If RGI and/or UBS considered the information important in deciding whether to purchase, it knew that a reasonable investor would likewise consider it important in deciding whether to sell. No information was ever given in this case, though such was promised under each brokerage.

73. Mrs. Rivera's investment objectives were of the most conservative nature in tandem with her age, and having to do with the generation of income, from the interests of her investments.

74. Mrs. Carmen Rivera did not know that a high risk trade was placed, making those trades unauthorized. These trades were in fact unauthorized.

75. RG knew that they had the duty to discuss the referred trading and/or purchase of securities in the account.

76. RG and/or UBS had a duty to inform Mrs. Rivera about the Fund's situation. They did not and therefore, in committing fraud at the inception for material gain of commissions and/or to maintain only their products, were and are guilty of breaching the contract with Mrs. Rivera.

77. UBS did not honor the obligations originally contracted with Mrs. Rivera.

78. Mrs. Rivera's loss of money investment due to Defendants breach of their agreement is estimated in an amount of not less than $351,148.00. At the time of the filing of this complaint.

79. Mrs. Rivera's total losses under this cause of action are estimated in the amount of no less than $364,000.00 at the time of the filing of this complaint.

### THIRD CAUSE OF ACTION – TORT CLAIM
(All prior paragraphs are hereby incorporated by reference.)

80. The loss of income of funds if correctly invested would be calculated in an amount of $267,148.00. *See* paragraph 47 of the present Verified Complaint.

81. Defendants RG Investments Corporation and UBS Financial Services Incorporated of Puerto Rico, Inc. as controlling person had and have a continuing legal duty to maintain and enforce a proper system of internal supervision to prevent the acts stated herein. No such action was ever taken regarding Plaintiff.

82. RGI and UBS can only act through agents, and as controlling persons who are additionally liable for the wrongful acts herein described.

83. Individual brokers, and/or other RGI and/or UBS agents' acts violated Articles 1802 and 1803 of the Puerto Rico Civil Code, PR Laws Ann., Tit. 31 § 5141 and § 5142.

84. RGI and/or UBS agents' omissions caused Mrs. Carmen Rivera great emotional harm, distress and apprehension at the loss of a substantial part of her fortune destined to her living a tranquil old age.

85. Mrs. Rivera was economically and emotionally damaged because she relied on RGI and/or UBS's fraudulent statements regarding her accounts and the reflected value of both her direct and beneficial ownerships.

86. Such negligent acts caused Mrs. Rivera substantial losses in excess of at least $267,148.00 or more in interest, economic insecurity, intense emotional anguish and distress. Such damages are estimated in an amount no less of $500,000.00.

87. At all times relevant, and regarding all causes of action herein contained, Mrs. Rivera was fraudulently induced at the inception, and later, especially to hold the bonds by false statements and inducements since 2004, and by false statements as to liquidity and quality of investments which were not AAA as it must be since the beginning.

88. Mrs. Rivera elects to have all transactions undone under the Civil Code, and to be returned to where she would have been at the outset, (return of all cause or equivalents - "devolución de las prestaciones o su equivalente") with damages, interest, fees and costs. 31 P.R. Laws Ann. § 3052.

**FOURTH CAUSE OF ACTION –SARBANES OXLEY VIOLATION**
(All prior paragraphs are hereby incorporated by reference.)

89. Apparently, internal Sarbanes Oxley controls were inexistent or inoperative regarding this account, since no monitoring from the "compliance" department was ever noted or received.

90. Section 302 of the Act mandates a set of internal procedures designed to ensure accurate financial disclosure. 15 U.S.C. § 7241.

91. The financial statements that are published by issuers are required to be accurate and presented in a manner that does not contain incorrect statements or admit to state material information. RGI and UBS failed to do so regarding Mrs. Rivera's account.

92. The signing officers must certify that they are "responsible for establishing and maintaining internal controls" and "have designed such internal controls to ensure that material information relating to the company and its consolidated subsidiaries is made known to such officers by others within those entities, particularly during the period in which the periodic reports are being prepared." 15 U.S.C. § 7241(a)(4).

93. RGI and/or UBS' officers failed to evaluate the effectiveness of the companies' internal controls. They failed to:

   a) Have rreviewed the report;
   b) The report does not contain any material untrue statements or material omission or be considered misleading;
   c) The financial statements and related information fairly present the financial condition and the results in all material respects;
   d) The signing officers are responsible for internal controls and have evaluated these internal controls within the previous ninety days and have reported on their findings;
   e) A list of all deficiencies in the internal controls and information on any fraud that involves employees who are involved with internal activities;
   f) Any significant changes in internal controls or related factors that could have a negative impact on the internal controls.

94. Under Section 404 of the Act, management is required to produce an "internal control report" as part of each annual Exchange Act report. 15 U.S.C. § 7262.

16

95. The report must affirm "the responsibility of management for establishing and maintaining an adequate internal control structure and procedures for financial reporting." 15 U.S.C. § 7262(a). RGI and/or UBS failed to do so.

96. The reports clearly do not show a truly assessment of the effectiveness of the internal control structure and procedures of the issuer for financial reporting. RGI and/or UBS have failed to adopt an internal control framework.

**WHEREFORE**, Mrs. Carmen Rivera Babin requests of this Honorable Court that enter Judgment ordering RG Investments Corporation and Codefendant, or successor party in interest UBS Financial Services Incorporated of Puerto Rico, Inc. to return each and every amount originally consigned in her account, plus reasonable interest on same, for the period in question, which should be no less than:

A) $364,000.00 in return of the totality of the funds used, and originally induced to be placed in investment by RGI plus accrued interest;

B) termination of any and all agreements, or otherwise, which were entered into by use of fraud, or misrepresentation, with all related costs in her favor, such as tax payments etc.;

C) punitive damages as they may be assessed;

D) emotional damages estimated in the amount of $500,000.00;

E) legal fees and costs;

F) damages and loss of investment potential as may be calculated by experts.

**RESPECTFULLY SUBMITTED.**

I hereby certify that on February 18th, 2010, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system.

In San Juan, Puerto Rico, this 18th day of February 2010.

s/ RALPH VALLONE, JR.
ATTORNEY FOR PLAINTIFF
USDC NO. 117806
1319 ASHFORD AVE.
SON SID COND., SUITE 1
SANTURCE, P. R. 00907
TEL.: (787) 723-9393
FAX : (787)723-9251
rv@rvallonelawoffice.com

## STATEMENT UNDER PENALTY OF PERJURY

I, Carmen Rivera Babin, under penalty of perjury, hereby attest that I have read the foregoing Verified Complaint and that the facts alleged there are true, to the best of my knowledge.

*[signature]*
**CARMEN RIVERA BABIN**

18